IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:14-CT-3091-BO

| | | |
|---|---|---|
| CHARLES A. WILLIAMS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| SGT. SHULTIZ et al., | ) | |
| | ) | |
| Defendants. | ) | |

The matter comes before the court on plaintiff's unopposed motions for default judgment (DE 168, 170, 172) as to defendant Linette Jordan ("Jordan"). In this posture, the issues raised are ripe for ruling. For the reasons that follow, the court grants plaintiff's motions for default judgment, and awards plaintiff $10,000.00 in compensatory damages.

## STATEMENT OF THE CASE

As set forth in the court's August 30, 2019, order:

> On April 9, 2014, plaintiff Charles A. Williams ("plaintiff"), a state inmate, filed this civil rights action *pro se* pursuant to 42 U.S.C. § 1983, alleging that defendants Reginald Speller ("Speller") and [Jordan] used excessive force against him in violation of the Eighth Amendment to the United States Constitution. Plaintiff additionally alleged a bystander liability claim against defendant Speller, as well as defendants Victor Shultis ("Shultis") and Damion M. Ridley ("Ridley"). [As relief, plaintiff requested "compensatory, nominal, punitive damages $2,000,000 million."] On May 12, 2015, the court stayed this case pending the disposition of a parallel action before the North Carolina Industrial Commission in Williams v. C/O Jordon, No. TA-24669. The court subsequently lifted the stay and resumed this action on May 4, 2018. Then, on October 29, 2018, the court granted plaintiff's motion for entry of default as to defendant Jordan,

> and the Clerk of Court made an entry of default as to defendant Jordan the next day.
>
> On February 12, 2019, plaintiff filed a motion for partial summary judgment with attached exhibits. On April 1, 2019, defendants Ridley, Shultis, and Speller filed a cross-motion for summary judgment, arguing that plaintiff is unable to establish a constitutional violation. In support of their motion, defendants Ridley, Shultis, and Speller manually filed a video-tape of the alleged use of force incident. . . .

See (DE 166).

On August 30, 2019, the court entered an order granting defendants' motion for summary judgment and denying plaintiff's partial motion for summary judgment. As a result, the court dismissed all defendants except Jordan. The court also appointed North Carolina Prisoner Legal Services ("NCPLS") to assist plaintiff with moving for default judgment as to defendant Jordan. NCPLS then filed a motion for default judgment, and a corrected motion for entry of default on plaintiff's behalf. On September 11, 2019, plaintiff filed a pro se motion for default judgment, with a supporting affidavit. During this time period, NCPLS also moved to withdraw as counsel, and plaintiff consented to NCPLS's motion. See (DE 174). The court allowed NCPLS to withdraw as counsel for plaintiff.

On November 15, 2019, the court conducted a hearing on plaintiff's motion for entry of default judgment to establish the truth of plaintiff's allegations and to determine the amount of any damages. At the hearing, plaintiff testified and presented video evidence of the use of force incident.[1] In addition, the summary judgment record contains several exhibits including plaintiff's medical records following the use-of-force incident.

---

[1] Plaintiff's video evidence consists of two DVDs.

## STATEMENT OF FACTS

This action arose out of events that occurred at Bertie Correctional Institution ("Bertie") on April 13, 2013. (Compl. p. 4). At approximately 8:20 a.m. on that date, defendants Speller and Jordan entered the H-Pod to retrieve plaintiff, a maximum control status inmate, from the shower and to escort him back to his cell. (Speller Aff. ¶ 8). When Speller approached plaintiff in the shower, plaintiff stated that he was not ready, and asked for additional time. (Id.) Speller left plaintiff in the shower. (Speller Aff. ¶ 8; Video 1: 9:19:24-9:19:47). Shortly thereafter, defendant Jordan approached the shower and stated: "[You] need to speed up [be]fore she take her black stick out and pop the key inside the shower key door and drag [plaintiff] out." (Compl. p. 4: Video 1: 9:20:33). Defendant Jordan then opened the door to the shower, without first applying hand restraints to plaintiff, and slapped plaintiff on the right side of his face. (Compl. p. 4; Video 1: 9:20:41-48; Hrg. Tr. p. 3, l. 5). Plaintiff and defendant Jordan then got into a "tussle." (Hrg. Tr. p. 3, l. 7; Video 1:9:20:41-9:21:24). Speller and Jordan struggled to gain control over plaintiff. (Video 1:9:20:49-57).

At one point during the altercation, defendant Jordan attempted to remove her baton from its holster, but was unable to do so. (Id. 9:21:16-20). Jordan then grabbed defendant Speller's baton, raised the baton over her head, and brought it down onto plaintiff several times as Speller was pushing plaintiff back into the enclosed shower area. (Id. 9:21:20-9:21:28). Several correctional officers next arrived to provide assistance, and one officer gave plaintiff a direct order to lay on the ground so that the officers could apply wrist restraints. (Compl. p. 5; Hrg. Tr. p. 3, l. 14-24). Plaintiff complied. (Id.) At some point after plaintiff was restrained, defendant Jordan entered the shower area, and struck plaintiff with a baton several times while he was restrained. (Id. p. 4, l. 5-8).

3

Sergeant Wilson next "pulled [defendant Jordan] to stop the assault and push[ed] her out [of] the block." (Compl. p. 5; Video 1: 9:21:53-9:22:03). A correctional officer then proceeded to escort defendant Jordan out of H-Pod. (Video 1: 9:22:05-9:22:11).

After Jordan was removed from the shower area, correctional officers lifted plaintiff and carried him to Bertie's medical unit. (Hrg. Tr. p. 4, l. 17-19). As the officers were escorting plaintiff to the medical unit, defendant Jordan pushed her way toward plaintiff. (Video 2: 9:23:26). Correctional officers located in the hallway attempted to stop Jordan, and Jordan resisted the officers. (Id. 9:23:26-9:23:39). Jordan continued to resist fellow officers, until one officer physically lifted Jordan and carried her away from plaintiff. (Id. 9:23:57-9:24:24).

Plaintiff next was examined by Bertie's medical staff. Nurse Leticia Jerkins assessed plaintiff with abrasions to his neck, head, upper left and right arms, right knee, right and left arms, left leg, mid-chest area. (Clark Aff. Ex. C, pp. 6, 25). The nurse additionally noted bruising to plaintiff's upper and lower back, left upper shoulder, and head. (Id. p. 25; (DE 131), pp. 20-21). At the hearing, plaintiff testified that he was prescribed Naproxen, Salsalate, and Tylenol for his injuries. (Hrg. Tr. p. 6, l. 17; p. 12, l. 2-6). Plaintiff, additionally, testified that he suffers from ongoing back pain, as well as arthritis in his shoulder. (Id. p. 6, l. 1-5). Plaintiff stated he has difficulty sitting up at times, and that he suffers from nightmares, anxiety attacks, and shortness of breath as a result of the incident. (Id. p. 10, l. 14-17). Plaintiff further stated that he now receives mental health counseling. (Id. p. 10, l. 20-23).

Following an investigation into the April 13, 2013 incident, defendant Jordan was dismissed from her employment with the North Carolina Department of Public Safety ("DPS") for grossly inefficient job performance and unacceptable personal conduct. (Clark Aff. ¶ 11). In particular, the

4

investigation revealed that defendant Jordan failed to follow DPS standard operating procedure which required that control inmates be handcuffed behind their backs when moving from cells or showers. (Id.) The investigation concluded that defendant Jordan's failure to follow procedures resulted in plaintiff assaulting her and created the potential for serious bodily injury to staff. (Id.)

**DISCUSSION**

A.  Standard of Review

Once default has been entered pursuant to Federal Rule of Civil Procedure 55(a), as it has in the instant action, Rule 55(b)(2) authorizes the court to enter default judgment against a properly served defendant who fails to file a timely responsive pleading. Fed. R. Civ. P. 55(a), (b)(2). Upon default, the well-pleaded facts alleged in the complaint, as to liability, are deemed admitted. Ryan v. Homecomings Fin. Network, 253 F.3d 778, 780 (4th Cir. 2001). However, the court decides whether those admitted facts actually support the claim alleged and the relief sought when determining whether to enter default judgment. Id.

If the court determines that liability is established, it must then make an independent determination regarding damages. Id. at 780–81; see also, Etters v. Shanahan, No. 5:09-CT-3187-D, 2013 WL 787344, at * (E.D.N.C. Feb. 6, 2013) ("After a court determines, []that a judgment by default should be entered, it must determine the amount and character of the recovery that should be awarded.") (citations omitted); S.E.C. v. Lawbaugh, 359 F. Supp. 2d 418, 422 (D. Md. 2005) ("Upon default, the well-pled allegations in a complaint as to liability are taken as true, although the allegations as to damages are not."). The Court may determine the damages by conducting a damages hearing. See, e.g., E.E.O.C. v. Carter Behavioral Health Servs. Inc., No. 4:08–CV–122–F, 2011 WL 5325485 at *6 (E.D.N.C. Oct. 7, 2011), report and recommendation adopted, 2011 WL

5

5325473 (E.D.N.C. Nov. 3, 2011). The damages "must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c); see In re Genesys Data Techs., Inc., 204 F.3d 124, 132 (4th Cir. 2000) ("When a Complaint demands a specific amount of damages, courts have generally held that a default judgment cannot award additional damages.").

B.  Analysis

   1.  Liability

The sole remaining claim in this action is one of excessive force against defendant Jordan. "An inmate's Eighth Amendment excessive force claim involves both an objective and a subjective component." Brooks v. Johnson, 924 F.3d 104, 112 (4th Cir. 2019). "The objective component asks whether the force applied was sufficiently serious to establish a cause of action." Id. Satisfying the objective component in the context of an excessive force claim, on the other hand, demands only that the force used be "nontrivial." Wilkins v. Gaddy, 559 U.S. 34, 39 (2010). Here, plaintiff has presented evidence sufficient to satisfy the objective prong of the Eighth Amendment test.

"[T]he subjective component ... asks whether the officers acted with a sufficiently culpable state of mind." Brooks, 924 F.3d at 112 (internal quotation marks omitted). A prisoner must meet a heavy burden to satisfy the subjective component–that prison officials applied force "maliciously and sadistically for the very purpose of causing harm rather than in a good faith effort to maintain and restore discipline." Boone v. Stallings, 583 F. App'x 174, 176 (4th Cir. 2014) (citing Whitley v. Albers, 475 U.S. 312, 320-21 (4th Cir. 1986)). For an excessive force claim, the relevant state of mind is "wantonness in the infliction of pain." Whitley, 475 U.S. at 322. In determining whether a prison official has acted with "wantonness," relevant factors include: (1) the need for the application of force; (2) the relationship between the need and the amount of force used; (3) the

6

threat reasonably perceived by the responsible officials; and (4) any efforts made to temper the severity of a forceful response. Whitley, 475 U.S. at 321.

Applying the Whitley factors, the court finds plaintiff presented evidence to establish that defendant Jordan used force once the need for force had abated, and that she struck him while he was in restraints. Accepting plaintiff's allegations as true, plaintiff alleged sufficient facts to satisfy the subjective prong of the Eighth Amendment test, and, thus, a violation of the Eighth Amendment. See Thompson v. Shelton, 541 F. App'x. 247, 250 (4th Cir. 2013); Campbell v. Smith, 406 F. App'x 741, 743 (4th Cir. 2010) ("Based on Campbell's version of events giving rise to this litigation, he was in handcuffs and restrained by McClinen when Smith hit him. If this version of events is accepted, a trier of fact could easily conclude that an Eighth Amendment violation occurred."); Williams v. Maryland, No. DKC 09-0879, 2011 WL 3422825, at *4 (D. Md. Aug. 3, 2011). Based upon the foregoing, plaintiff's motion for default judgment against defendant Jordan is GRANTED.

2. Damages

a. PLRA Requirement

"The Prison Litigation Reform Act ("PLRA") establishes limitations on recovery of compensatory damages by prisoners in civil lawsuits by providing that 'no Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury.'" Richardson v. Bostick, No. 5:11-CT-3045-FL, 2014 WL 3508916, at *16 (E.D.N.C. July 14, 2014) (quoting 42 U.S.C. § 1997e) (citation omitted). Here, the record reflects that plaintiff suffered bruising and abrasions to various parts of his body. As a result, he satisfies the PLRA's physical injury requirement.

b. Compensatory and Punitive Damages

The court begins with plaintiff's request for compensatory damages. "[W]hatever the constitutional basis for § 1983 liability, such damages must always be designed to compensate injuries caused by the [constitutional] deprivation." Memphis Community School Dist. v. Stachura, 477 U.S. 299, 306 (1986). "[I]n determining the propriety and amount of compensatory damages, courts look to factors such as loss of esteem, physical injury, psychological counseling, loss of income, the degree of distress, the context of the underlying events, corroborative evidence, the nexus between the challenged conduct and distress, and mitigating circumstances." Carrington v. Easley, No. 5:08-CT-3175-FL, 2011 WL 2132850, at *4 (E.D.N.C. May 25, 2011) (citing Price v. City of Charlotte, N.C., 93 F.3d 1241, 1254 (4th Cir. 1996)).

The court has reviewed damages awards in similar excessive force actions. See Sorto v. MacDonald, No. 5:15-CT-3131-D, 2018 WL 4404714, at *6 (E.D.N.C. Aug. 20, 2018) (awarding $25,000.00 in compensatory damages in default judgment proceedings where there were a series of separate assaults resulting in injuries including bruising, head trauma, and emotional distress), adopting memorandum and recommendation, No. 5:15-CT-03131-D, 2018 WL 4356767 (E.D.N.C. Sept. 12, 2018); Richardson, 2014 WL 3508916, at *7 (awarding $10,000 in compensatory damages in default judgment proceeding where plaintiff was assaulted, and required emergency medical and psychological treatment afterwards); Barnard v. Piedmont Reg'l Jail Auth., No. 3:07-CV566, 2009 WL 2872510, at *6 (E.D. Va. 3 Sept. 2009) (awarding plaintiff $250 from each of three defendants for compensatory damages in default judgment proceeding involving excessive force); see also Monclova-Chavez v. McEachern, No. 1:08-CV-76 AWI BAM, 2015 WL 75084, at *7 (E. D. Cal. 6 Jan. 2015) (awarding $7,000 in compensatory damages in excessive force action). After

8

consideration of the record in this action and upon reviewing the aforementioned comparable cases, the court awards plaintiff $10,000.00 in compensatory damages.

Regarding punitive damages, the law permits, but does not require, an award for punitive damages in a § 1983 action. Smith v. Wade, 461 U.S. 30, 51 (1983). Punitive damages may be awarded "to punish [a defendant] for [her] outrageous conduct and to deter [her] and others like [her] from similar conduct in the future." Id. 461 U.S. at 54. Upon a review of the record, the court finds that the award of compensatory damages is adequate to compensate plaintiff, and declines to award punitive damages. Id. p. 51.

## CONCLUSION

In summary, plaintiff's motions for default judgment as to defendant Jordan (DE 168, 170, 172) are GRANTED. The court awards plaintiff $10,000.00 in compensatory damages. The Clerk of Court is DIRECTED to close this case.

SO ORDERED, this the 18 day of December, 2019.

*Terrence Boyle*
TERRENCE W. BOYLE
Chief United States District Judge